UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DWIGHT MOORE,

    Plaintiff,

    v.

THOMAS DART, Sheriff of Cook County,
and COOK COUNTY,

    Defendants.

No. 13 CV 3276

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

While a pre-trial detainee at Cook County Jail, Dwight Moore was taken to an offsite hospital for medical care. He was unconscious on arrival, and his injuries left him unable to eat, so he was fed intravenously. Throughout his stay, pursuant to the Cook County Sherriff's express policy, Moore was guarded by correctional officers and shackled to his bed. Moore sued the Sheriff, Thomas Dart, in his official capacity, alleging that the shackling policy violated Moore's due process rights under the Fourteenth Amendment.[1] Dart moves for summary judgment. For the reasons below, that motion is denied.

### I. Legal Standards

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir.

---

[1] Moore voluntarily dismissed his claims against defendants based on their alleged deliberate indifference to his serious medical needs. [52], [56].

2014); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014).

## II.  Facts[2]

Dwight Moore was admitted to Cook County Jail on May 18, 2011. DSOF ¶ 12. He was classified as a maximum-security detainee. DSOF ¶ 35. At admission, medical personnel noted that he limped and needed a cane to walk. PSOF ¶ 2. Two days later, he was evaluated by a registered nurse, who noted that Moore "walks with a walking stick with poor gait" and had to be "helped to the dispensary by another detainee." PSOF ¶ 3.

On July 3, 2011, Moore was assaulted (or was in a fight), and he sustained injuries that required immediate attention. DSOF ¶¶ 6, 13–15. He was assessed by medical staff and sent to Mt. Sinai Hospital. DSOF ¶ 6. After losing consciousness, Moore arrived at Mt. Sinai with a swollen right mandible and contusions on his chest and face. PSOF ¶ 4. He was diagnosed with a broken hand, a lacerated liver,

---

[2] The facts are taken from the parties' Local Rule 56.1 statements. "DSOF" refers to defendants' statements, with Moore's responses ([54] at 1–13). "PSOF" refers to Moore's statements, with Sheriff Dart's responses ([58] at 1–4).

and a contusion to the head. DSOF ¶ 6. His injuries prevented him from eating, so he was fed intravenously. PSOF ¶ 9; DSOF ¶ 37.

Mt. Sinai is a public hospital, where detainees are not segregated from others. DSOF ¶ 16. Moore shared a room with a non-custodial patient. DSOF ¶ 26. Moore's family was sometimes present in the room. DSOF ¶ 37. On July 6, 2011, Moore was moved to Stroger Hospital. PSOF ¶ 11; DSOF ¶ 39. Stroger is a large facility that treats many patients and has a large staff. DSOF ¶ 54.

The Sheriff maintains an express policy concerning hospital detainees, which provides, among other things, that:

- "Constant visual surveillance of detainee is required and maintained at all times. At no time is a detainee to be left unattended under any circumstances.";

- "Handcuffs will be applied to one wrist . . . . Chain will be wrapped around bed frame (not to be attached to hand rails of bed or to part of bed that can be broken off) and padlocked secured.";

- "[O]ne [l]eg shackle will be applied to the opposite ankle . . . . Other leg shackle is to be attached to a sturdy part of bed[.] [L]eg shackles are also to be double locked.";

- "Handcuffs, shackles blue box, chain and padlock will be standard policy for all detainees at hospitals."; and

- "If detainee is to be ambulated, transported or tested, supervisor will assign two officers to perform task. Detainee is still to be restrained either with handcuffs or leg shackles or other approved restraining devi[c]e."

[47-4, pp. 75–82] at 75–76 (emphasis in original). While at Mt. Sinai and Stroger, pursuant to this policy, Moore was shackled by arm and leg to his hospital bed, and was always guarded by at least one correctional officer (and sometimes two). PSOF ¶¶ 8, 12–13; DSOF ¶¶ 7, 18, 23–25, 40; *see also* [57] at 13; [46] at 14.

3

### III. Analysis

Plaintiff sued Sheriff Dart in his official capacity, so the suit is treated as one against the county itself. *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008).[3] Moore must therefore show that he suffered a constitutional injury, and that injury was caused by: (1) an express policy; (2) a widespread practice that is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a person with final policy-making authority. *Klebanowski v. Sheahan*, 540 F.3d 633, 637 (7th Cir. 2008) (citation omitted); *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91 (1978). There is no dispute that the Sheriff's shackling policy is an express policy, therefore the question is whether that policy, as applied to Moore, caused a constitutional injury. That analysis proceeds under the Due Process Clause of the Fourteenth Amendment. *McGee v. Adams*, 721 F.3d 474, 480 (7th Cir. 2013) ("Claims concerning the conditions of confinement of civil detainees are assessed under the due process clause of the Fourteenth Amendment.").

"The Due Process Clause of the Fourteenth Amendment prohibits the use of bodily restraints in a manner that serves to punish a pre-trial detainee." *May v. Sheahan*, 226 F.3d 876, 884 (7th Cir. 2000) (citing *Youngberg v. Romeo*, 457 U.S. 307, 316 (1982); *Bell v. Wolfish*, 441 U.S. 520, 535–37 (1979); *Murphy v. Walker*, 51 F.3d 714, 717–18 (7th Cir. 1995)). "The use of bodily restraints constitutes punishment in the constitutional sense if their use is not rationally related to a

---

[3] The county is also a named defendant, as an indemnifier. *See Carver v. Sheriff of LaSalle County*, 324 F.3d 947, 948 (7th Cir. 2003).

legitimate non-punitive government purpose or they appear excessive in relation to the purpose they allegedly serve." *May*, 226 F.3d at 884 (citing *Wolfish*, 441 U.S. at 561).

Sheriff Dart argues that the shackling policy is rationally related to preventing escapes. [46] at 17. That is a legitimate non-punitive government purpose. *Hart v. Sheahan*, 396 F.3d 887, 893 (7th Cir. 2005) ("[T]he detention facility has an interest in . . . preventing escapes."). And shackling detainees while they are on hospital visits furthers that purpose. *May*, 226 F.3d at 884 ("Certainly, shackling all hospital detainees reduces the risk of a breach of security and thus furthers a legitimate non-punitive government purpose."). The shackling policy is rationally related to a non-punitive purpose, but it may still violate due process if it is excessive in relation to its escape-prevention purpose. In *May*, the Seventh Circuit said that shackling hospital detainees "around the clock, despite the continuous presence of a guard" was "plainly excessive in the absence of any indication that the detainee poses some sort of security risk." *Id*.

The Eighth Circuit follows a different rule. In *Haslar v. Megerman*, 104 F.3d 178 (8th Cir. 1997), the plaintiff was taken to the hospital in a "virtually comatose" state. *Id*. at 179. Despite his frail state, pursuant to official policy, he was guarded and shackled to his bed at all times. *Id*. The Eighth Circuit held that the policy was not excessive, and therefore not unconstitutional punishment, noting that "[a] single armed guard often cannot prevent a determined, unrestrained, and

5

sometimes aggressive inmate from escaping without resorting to force." *Id*. at 180.[4] The Eighth Circuit's rule, unlike the Seventh Circuit's, does not appear to consider the security risk presented by the particular detainee at issue (who, in *Haslar*, was virtually comatose). *Haslar* is, of course, not binding here; *May* is the authoritative precedent in this circuit.

Sheriff Dart argues that *May* is no longer good law, in view of *Florence v. Board of Chosen Freeholders*, 132 S.Ct. 1510 (2012). [57] at 7. In *Florence*, the Supreme Court held that it is constitutionally permissible for a jail to strip-search all detainees during the initial intake process—an individualized assessment is not required. The plaintiff proposed that detainees should be exempt from initial strip-searches unless: (1) they were arrested for serious crimes; (2) they were arrested for crimes involving weapons or drugs; or (3) they gave officers a particular reason to suspect them of hiding contraband. *Id*. at 1514–15, 1520. The Court held that such an individualized assessment would be unworkable and ineffective, given the purposes of and circumstances surrounding initial intake. The Court considered the jail's need to urgently discover: (1) contagious diseases; (2) injuries requiring immediate medical attention; (3) tattoos indicating gang-affiliation; and (4) weapons, drugs, alcohol, and other prohibited items. *Id*. at 1518–20. The Court noted that exempting some detainees from strip-searches could put those detainees at risk of being coerced by others into concealing contraband. *Id*. at 1521. The Court

---

[4] Although the court used the word "inmate," the plaintiff was a pre-trial detainee, 104 F.3d at 179, and the court analyzed his claim as one lodged by a detainee, not a convicted prisoner.

6

also noted that the initial intake process happens immediately, and little may be known about a particular detainee before the process begins. *Id*. at 1521–22.

*Florence* does not mention shackling off-site detainees, and the Seventh Circuit has not revisited *May* since *Florence* was decided in 2012. The concerns that framed the Court's discussion in *Florence* are not the same as those present here. The needs to screen for diseases, injuries, gang affiliation, or contraband do not apply in the present context. Further, a detainee like Moore, who is sent offsite for medical treatment, has *already* undergone an individualized assessment, so concerns about timing and burden do not factor as heavily as they did in *Florence*. In short, I conclude that *May* remains good law in this circuit; and accordingly, that it can violate due process to shackle a hospital detainee "around the clock, despite the continuous presence of a guard" "in the absence of any indication that the detainee poses some sort of security risk." *May*, 226 F.3d at 884.

*May* was decided at the motion to dismiss stage. The court stated that "[p]erhaps after some discovery [the Sheriff] can produce evidence justifying both his shackling policy in general and his shackling of May in particular, but May's allegations are more than adequate to survive a motion to dismiss." 226 F.3d at 884. In this case, the Sheriff has justified the policy in general, but Moore has raised a genuine issue of material fact about his shackling in particular. Moore was sent to the hospital because of a physical altercation with another detainee (whether it was an assault or a fight is not a matter for summary judgment). DSOF ¶¶ 13–15. And mere days after being discharged, Moore attempted to strike another detainee.

7

DSOF ¶ 50. Although neither incident involved an attempted escape, they may suggest that Moore presented some security concerns. On the other hand, Moore argues that he was medically fragile, and thus not a flight risk. He argues that: (1) he needed a cane to walk (PSOF ¶¶ 1–3); (2) he was unconscious when transported to Mt. Sinai Hospital (PSOF ¶ 4); and (3) his injuries left him unable to eat, so he had to be fed intravenously (PSOF ¶ 9; DSOF ¶ 39). Pursuant to the Sheriff's policy, he was guarded at all times by a correctional officer (sometimes two officers). But despite his condition, and the presence of one or more guards, he was continuously shackled by arm and leg to his hospital bed. On this record, viewing the facts and making reasonable inferences in favor of the non-movant, Moore, there is a genuine dispute as to whether the Sheriff's policy, as applied, was excessive (and therefore unconstitutional).[5] Moore's burden to prevail at trial is a significant one, given the deference owed to the Sheriff, *see Bell*, 441 U.S. at 547, but the Sheriff has not shown that no genuine dispute of material fact exists.

---

[5] In similar cases, district courts in this circuit have cited *May* and denied the Sheriff's summary-judgment motions. In *Jackson v. Dart*, 2011 U.S. Dist. LEXIS 146000 (N.D. Ill. Dec. 20, 2011), a class of plaintiffs challenged the widespread practice of shackling women during labor despite the continuous presence of a guard. The Sheriff admitted that some class members were not likely to attempt escape, but disputed the level of risk posed by other class members, and there was undisputed evidence that some pregnant detainees had previously attempted escape. *Id*. at *24. The district court found that summary judgment could not be granted to either side on the question of whether the widespread shackling practice was excessive. *Id*. In *Flores v. Sheriff of Cook County*, 2014 U.S. Dist. LEXIS 34863, *16–17 (N.D. Ill. Mar. 18, 2014), an even more closely analogous case to this one, the district court denied summary judgment when the particular detainee raised a factual issue as to the application of the restraint policy to him.

## IV. Conclusion

For the foregoing reasons, defendants' motions for summary judgment [45] and [49] are denied.

ENTER:

/s/ Manish S. Shah
Manish S. Shah
United States District Judge

Date: 12/18/14